UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PEDRO ZERPA, et al.,<br><br>Defendants. | Case No. 19-cv-02791-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 36, 37 |

Pending before the Court are the parties' cross-motions for partial summary judgment for which briefing is complete. Dkt. Nos. 36 ("ISM Mot."), 37 ("FPG Mot."), 38 ("ISM Opp."), 40 ("FPG Reply"). Plaintiff Integrated Sports Management, Inc. d/b/a Integrated Sports Media ("ISM") initially sought a summary judgment of liability under 47 U.S.C. Section 605, as well as under a theory of common law conversion, for the interception and broadcast of a soccer game by Defendants Pedro Zerpa ("Zerpa"), Julio Antonio Martinez "("Martinez"), and Fusion Peruvian Grill Corporation d/b/a Fusion Peruvian Grill ("FPG"). Defendants cross-moved for summary judgment, conceding that FPG is liable for violating 47 U.S.C. Section 553, and for conversion, but denying that Defendants Zerpa and Martinez are liable in their individual capacities. Defendants also moved for summary judgment of nonliability for violations of UCL Section 17200. Plaintiff reversed course in its opposition, abandoned its claim of liability under Section 605, and now seeks summary judgment that all Defendants are liable under Section 553, as well as under a common law conversion theory. The Court held a hearing on the motions on April 23, 2020. Dkt. No. 43.

The Court **GRANTS** in part and **DENIES** in part the motions for summary judgment. As liability is admitted under Section 553, the Section 605 cause of action is not viable, and summary

judgment will be granted in favor of all Defendants. The Court will grant summary judgment of liability in favor of Plaintiff on the Section 553 and conversion causes of action as to Defendants FPG and Zerpa, and will deny summary judgment on those causes of action as to Defendant Martinez. The Court will also deny summary judgment as to the UCL Section 17200 cause of action.

**I.   BACKGROUND**

Defendant FPG is a California corporation formed on July 10, 2015 by Defendants Pedro Zerpa and Julio Martinez. Dkt. No. 37-1 ("Zerpa Decl.") ¶ 2; *see id.* at 5-6 (Ex. A). Plaintiff ISM was granted exclusive nationwide commercial distribution rights to broadcast Peru v. Scotland, International Friendly Soccer Game ("Program") on Tuesday, May 29, 2018. Dkt. No. 1 ("Compl.") ¶¶ 20-21. Plaintiff entered into a number of sub-licensing agreements with various bars and restaurants, among others, to permit broadcasting of the Program. *Id.* ¶ 21. FPG had access to television and internet services through a Comcast commercial account. Zerpa Decl. ¶ 6.

On March 23, 2018, Defendant Zerpa responded to a solicitation from "latamtvip.com," an online television service, and requested information about Peruvian television programming. FPG Mot. at 2. Defendant Zerpa sent an email to latamtvip.com's representative, who established FPG's account and charged FPG the service fee to exhibit the Program without a license from ISM . Zerpa Decl. ¶ 7. FPG and Defendant Zerpa had never previously purchased pay-per-view programming. *Id*. ¶¶ 7-8. Defendant Zerpa contends that he never read latamtvip.com's Terms of Service, nor the Comcast Terms of Services, and was unaware FPG would require an additional license, because he believed that all of the programming that was available was purchased lawfully by FPG. *Id*. ¶¶ 6-7, 9. There is no dispute that the Program was received and published via cable at the FPG establishment without ISM's authorization on May 29, 2018. *See* ISM Opp. at 2; Zerpa Decl. ¶¶6-7. The Program was advertised on FPG's Facebook page, where it was also livestreamed. Dkt. No. 36-1 ("Riley Decl.") at 8-9.

On May 22, 2019, Plaintiff filed suit and alleged violations of 47 U.S.C. Section 605 ("Section 605"), 47 U.S.C. Section 553 ("Section 553"), common law conversion, and the California Business and Professions Code Section 17200 ("UCL Section 17200"). Dkt. No. 1.

2

1  ISM never served discovery on the Defendants.  Dkt. No. 37-2 ("McCann Decl.") at ¶ 4.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment.  Fed. R. Civ. P. 56(a).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor.  *Celotex*, 477 U.S. at 325.  In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence."  *Nissan Fire*, 210 F.3d at 1105.  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Id.* at 1102-03.

3

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

### III.  DISCUSSION

#### A.  Section 605

Section 605 "prohibits commercial establishments from intercepting and broadcasting to [their] patrons satellite cable programming." *Integrated Sports Media, Inc. v. Mendez*, No. C 10-3516 PJH, 2014 WL 3728594, at *4 (N.D. Cal. July 28, 2014). Plaintiff initially moved for summary judgment that Defendants violated Section 605. ISM Mot. at 9. After Defendants conceded that FPG received and published the Program via cable and not satellite, FPG Mot. at 3, Plaintiff abandoned its motion as to this cause of action. ISM Opp. at 24. Because liability is conceded under Section 553, liability cannot also exist under Section 605. *J & J Sports Prods., Inc. v. Manzano*, No. 08-1872-RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). Defendants' motion for summary judgment of nonliability under Section 605 is **GRANTED**.

#### B.  Section 553

Plaintiff's revised theory of summary judgment is that Defendants' unauthorized interception and exhibition of the Program violated Section 553. Section 553(a)(1) provides that: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). To establish liability under Section 553, Plaintiff must demonstrate that: (1) Plaintiff had a proprietary right in the Program, (2) Plaintiff did not authorize Defendants' exhibition of the Program, and (3) Defendant exhibited the Program via cable. *See Integrated Sports Media, Inc. v. Canseco*, No. CV 10-7392

RSWL AJWX, 2012 WL 631851, at *4 (C.D. Cal. Feb. 27, 2012).

### i. Defendant FPG

Defendants concede that FPG violated Section 553, and that FPG received and displayed the Program via cable, without authorization from ISM. FPG Mot. at 3. The parties do not dispute that ISM owned the commercial licensing rights to the Program. *Id*. Plaintiff has therefore met its burden of establishing that FPG is liable under Section 553. Accordingly, Plaintiff's motion concerning FPG's liability under Section 553 is **GRANTED**.

### ii. Personal Liability of Individual Defendants

Defendants, while conceding liability as to FPG, contend that Defendants Zerpa and Martinez cannot be held personally liable under Section 553 based on "established principles of limited liability." FPG Mot. at 20. Personal liability for the acts of a corporation under Section 553 requires that the individual had "right and ability to supervise the violation, as well as an obvious and direct financial interest in the misconduct." *Joe Hand Promotions, Inc. v. Alvarado*, No. CV F 10-0907 LJO JLT, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011) (quotations and citation omitted). To satisfy both prongs, Plaintiff must show that the "defendant had supervisory power over the infringing conduct itself" and that any financial interest was directly linked to that conduct. *See J & J Sports Prods., Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011). Status as an officer alone is "insufficient to show … the requisite supervision authority or financial interest to warrant individual liability." *Id*.

#### a. Defendant Zerpa

Defendant Zerpa is Chief Executive Officer of FPG. Compl. ¶¶ 7-8, 10; Riley Decl. at 6 (Ex. 2). Plaintiff submits evidence that Defendants Zerpa and Martinez are the only individuals identified on the California Alcoholic Beverage and Control license issued for FPG. Compl. ¶ 8; Riley Decl. ¶ 4. Plaintiff alleged that Defendant Zerpa either took action himself or directed employees to intercept and exhibit the Program, Compl. ¶ 23, and Defendant Zerpa admits that he took steps to obtain the Program through latamvip.com. ISM Opp. at 4; Zerpa Decl. ¶¶ 7-8. Defendant Zerpa also admits to holding the title of CEO, and to being identified on the liquor license. Dkt. No. 23 ("Answer") ¶¶ 7-8.

5

Defendant Zerpa acknowledges having "the right and ability to supervise the activities of Fusion Peruvian Grill, which included the unlawful interception of Plaintiff's Program[,]" on May 29, 2018, and to having "an obvious and direct financial interest in the activities of Fusion Peruvian Grill." *Id.* ¶¶ 11, 12, 15. Defendant Zerpa, while acknowledging he corresponded on behalf of FPG with latamtvip.com to acquire the Program, asserts that he is not liable because Plaintiff has failed to establish "alter-ego liability." FPG Mot. at 19. Defendant Zerpa contends that he was under the mistaken belief that the Program was legitimately acquired, and was therefore lawful. Zerpa Decl. ¶ 9. Similarly, Defendant Zerpa contends that his lack of awareness regarding the need to purchase a commercial license for the Program was negligent, and did not meet the heightened willfulness standard set forth in Section 553. *Id.* ¶ 10; FPG Mot. at 2.

The Court finds that Defendant Zerpa was the "moving active conscious force" in intercepting and exhibiting the Program. *See J & J Sports Prods., Inc. v. Walia*, 2011 WL 902245, at *3. While Defendant Zerpa professes ignorance regarding the legality of his actions, there is no dispute that he was the individual who took the steps necessary to obtain the Program and broadcast it at FPG, ISM Opp. at 4 (citing Zerpa Decl. ¶¶ 7-8), and that he had a financial interest warranting individual liability. Answer ¶¶ 11, 12, 15 (admitting allegations of Complaint that, among others, Zerpa "had an obvious and direct financial interest in the activities of [FPG]").

Whether Defendant Zerpa's conduct is willful, oblivious, or negligent is not a factor in determining liability. *See Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir. 1998) ("The remedial provisions in both Sections 553 and 605 take into consideration the degree of the violator's culpability and provide for reduced damages in those instances where the violator was unaware of the violation."); *see also J & J Sports Productions, Inc. v. Delgado*, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012) ("[b]oth § 553 and § 605 are strict liability statutes"). The Court therefore finds that there is no genuine issue of material fact that Defendant Zerpa had the supervisory power and direct financial interest to be held personally liable.[1] Therefore, the Court **GRANTS** summary judgment in favor of Plaintiff as to Defendant

---

[1] Whether FPG is formed as a limited liability corporation or a corporation under California law, "this distinction does not alter the appropriate standard for individual shareholder liability." *J & J*

6

Zerpa's liability under Section 553.

### b. Defendant Martinez

Defendants Martinez and Zerpa allegedly had a "falling out" that caused Martinez to resign and "relinquish his rights in FPG on March 1, 2018," prior to the alleged violation of Section 553. Zerpa Decl. ¶ 4. Since the time Martinez relinquished his rights in FPG, Defendants contend that he has had no rights to supervise, nor any rights to profit from, FPG's operations. *Id.* In support of this argument, Defendants submit evidence of a resignation letter signed by Julio Martinez on March 1, 2018. *Id.* (Ex. D).[2] Nevertheless, Plaintiff contends that Defendant Martinez is an owner with oversight of the restaurant, Compl. ¶ 9, and cites to various records filed by Defendants with the California Secretary of State in which Defendant Martinez is identified as the co-owner of FPG. ISM Opp. at 5; Riley Decl. ¶ 4 (Ex. 1). Defendant Martinez was also the primary owner of the liquor license for Fusion Peruvian Grill at least as late as July 12, 2018. *See* Riley Decl. ¶ 4 (Ex. 1).

Notwithstanding Defendant Zerpa's liability, there remains a genuine issue of material fact regarding Defendant Martinez's liability, and as to whether and when he relinquished his rights in FPG. It is unclear when Defendant Martinez actually (and formally) relinquished ownership of FPG, if he ever did. As Plaintiff points out, subsequent filings with the California Secretary of State confirm the change of ownership status, but only as of June 2019. ISM Opp. at 5; Riley Decl. ¶¶ 4-5, Ex. 1-2. And while the parties disagree regarding the validity of the resignation letter submitted as evidence of the relinquishment of Martinez's rights, even if Martinez did not relinquish his rights, it is still unclear if he had the rights and abilities necessary to be found personally liable for the actions of FPG. For at least these reasons, the Court **DENIES** summary

---

*Sports Prods., Inc. v. Walia*, 2011 WL 902245, at *3.
[2] Plaintiff objects to Defendant Martinez's resignation letter on the grounds that it is hearsay, or in the alternative, that it does not qualify as a business record. ISM Opp. at 5. Plaintiff also contends that the Court cannot consider the letter as evidence at the summary judgment stage under Federal Rule of Civil Procedure 56(c)(4). ISM Opp. at 5. The Court **OVERRULES** Plaintiff's objection, and will consider the letter, because it is inappropriate to focus on the admissibility of the evidence's form at the summary judgment stage. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Instead, the focus at this stage in the proceeding is the admissibility of its contents. *Id.* Zerpa has directly explained in his Declaration what the letter is, and that it reflects Martinez's resignation, which is enough at this stage.

United States District Court
Northern District of California

judgment as to Martinez's liability on the Section 553 cause of action.

### iii. Damages as to FPG and Zerpa

Although the parties agree that FPG violated Section 553—and the Court has found that Defendant Zerpa is liable—they dispute which Section 553 damages provision should apply. Defendants request that the Court find that FPG and Zerpa are liable as non-willful violators under Section 553(c)(3)(A)(ii), and accordingly only award the minimum statutory damages. FPG Mot. at 4-5. Plaintiff, meanwhile, requests that the Court award enhanced damages for a willful violation pursuant to Section 553(c)(3)(B). ISM Opp. at 9.

There are two types of damages available for violations of Section 553: actual damages and statutory damages. "[T]he party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 553(c)(3)(A)(i) (providing formula for how to calculate profit). Alternatively, "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." *Id*. at (c)(3)(A)(ii). Here, ISM has elected to pursue statutory damages. *See* Compl. ¶ 33(a).

The statute provides an enhancement for willful violators, and a reduction for what might be characterized as "oblivious violators." Under Section 553(c)(3)(B), "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." 47 U.S.C. § 553(c)(3)(B). Under Section 553(c)(3)(C) "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." *Id*. at 553(c)(3)(C). Defendants do not contend that they are oblivious violators, and Section 553(c)(3)(C) does not apply. FPG Mot. at 4.

Determining the appropriate damages that apply under Section 553 requires two separate steps: (1) was the violation "willful"; and (2) what is the appropriate amount of statutory damages.

8

1  Defendants somewhat theatrically contend that the term "willfully" with respect to Section
2  553(c)(3)(B) has been rendered meaningless, and that "[c]ourts award enhanced damages almost
3  as a matter of course, not because defendants intended to violate signal piracy laws, but because of
4  the dubious conclusion that '[t]he broadcast of an event without authorization is a deliberate act,
5  and this establishes willfulness.'"  FPG Mot. at 11 (citing *J & J Sports Productions, Inc. v. Welch*,
6  No. 10-cv-0159, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010)).  However, a number of
7  Courts in this District have found that willfulness is not a mere formality.  *See Joe Hand*
8  *Promotions, Inc. v. Santana*, 964 F. Supp. 2d 1067, 1075 (N.D. Cal. 2013) ("The simple fact that
9  Mr. Guzman showed the Program in a commercial establishment is not enough to establish
10 willfulness."); *J & J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 918 (N.D. Cal. 2012) (finding
11 that establishment and owner did not commit a willful violation due to lack of awareness and
12 failure to read Comcast contract); *see e.g.*, *Innovative Sports v. West*, No. 19-cv-1455-WHO, 2019
13 WL 8261691, at *6 (N.D. Cal. Dec. 23, 2019) (denying summary judgment on willfulness, and
14 noting that the introduction of text messages suggesting that defendants were aware that the cost
15 of commercial licenses is much higher than what they paid to display a soccer game is a fact that
16 could prove willfulness); *compare Sports Prod. v. Marcaida*, No. 10-5125 SC, 2011 WL 2149923,
17 at *3 (N.D. Cal. May 31, 2011) (granting the entry of default judgment, and holding that under
18 Section 605 (satellite signal interception) "because of the extreme unlikelihood that Defendant
19 inadvertently acquired the signal to display the fight, *coupled with Defendant's failure to appear*
20 *in this lawsuit*, the Court finds that Defendant acted willfully and for the purposes of commercial
21 advantage and enhanced damages are warranted.") (emphasis added).
22       The evidence here raises a question of material fact concerning willfulness.  Defendants
23 contend that Plaintiff has not established a willful violation because Zerpa and FPG were unaware
24 that FPG required a commercial license from *both* latamtvip.com *and* ISM to lawfully broadcast
25 the Program at FPG.  Zerpa Decl. ¶ 9.  Defendants provide evidence that Zerpa responded to a
26 solicitation from latamtvip.com, requested information on latamtvip.com's services to broadcast
27 the Program at FPG, and used his FPG email address to do so.  *Id.* ¶ 7.  FPG paid latamtvip.com a
28 fee for the Program, the cost of which was $20 for the 90 days Defendants requested.  *Id*. at 21

(Ex. F). Latamtvip.com established the account for FPG, but according to Zerpa, never informed him that FPG might need to purchase an additional commercial license from ISM. *Id*. ¶ 7.

Plaintiff counters that Zerpa's conduct was "willful" because of his "reckless disregard" and "willful blindness" to ISM's property rights. ISM Opp. at 7-8. Plaintiff presents little evidence to support this contention, likely because discovery was not conducted.[3] Plaintiff's evidence, however, does show that Defendants advertised the Program on Facebook, Riley Decl. at 9-10, and livestreamed it on that same platform. *Id*. at 8.

Although the Ninth Circuit has not provided a specific test to determine the amount of enhanced damages, "District courts have thus considered different factors to determine culpability and to achieve proper compensation and deterrence. These include use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of offender's conduct on the claimant. Repeated violations may also justify enhanced damages." *Coyne*, 857 F. Supp. 2d at 917 (citation omitted). (quoting *J & J Sports Prods., Inc. v. Concepcion*, No. 10-cv-5092-WHA, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011)). Drawing all reasonable factual inferences in favor of Defendants, Zerpa's state of mind leading up to the display of the Program could show that he did not believe FPG required a license from ISM to display the Program, considering that this appears to be Defendants' first violation, they did not charge a cover fee or a drink minimum, they exhibited the Program on a single TV, and they paid latamtvip.com a (small) fee.[4] Conversely, drawing all reasonable factual inferences in favor of ISM, Zerpa's state of mind, as the owner of FPG, could show that he acted willfully by advertising and livestreaming the Program via Facebook, and was aware that FPG would require some type of further licensing separate and apart from the *de minimis* and

---

[3] Perhaps this is why Plaintiff moved for summary judgment on the grounds that Defendants used a satellite instead of cable to intercept the Program.

[4] Plaintiff relies on a number cases to argue that enhanced damages are found for "first-time offenders, and [where] plaintiff has provided no evidence of promotional activities or extensive exploitation of the intercepted programming." ISM Opp. at 13 (quoting *Concepcion*, 2011 WL 2220101, at *4); *see Joe Hand Promotions, Inc. v. Ho*, No. C-09-1435 RMW, 2009 WL 3047231, at *1 (N.D. Cal. Sept. 18, 2009). These cases involved either (1) the entry of default judgment where defendants had no opportunity to rebut the allegations, or (2) Section 605 violations (or, in the case of *Ho*, both). And in any event, these courts limited the amount of damages because the absent defendants were first-time offenders.

10

disproportionate fee paid to latamtvip.com.[5]

Further, there is also genuine dispute of fact over the cost of the license, a relevant factor in assessing statutory damages. Defendants contend that the license cost $750, FPG Mot. at 13, and ISM contends that it cost $1,000 (per its rate for establishments that have a seating capacity of between 50 and 100 people). ISM Opp. at 20 (citing McCann Decl. ¶ 3, Ex. H). The evidence raises a question of material fact concerning FPG's seating capacity, and thus the proper amount of the licensing fee.[6]

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255. The Court therefore finds that there is a genuine dispute of material fact as to FPG and Zerpa's state of mind, and **DENIES** both parties' summary judgment motions regarding willfulness and the appropriate damages cap under Section 553.[7]

### C. Conversion

Plaintiff's third cause of action alleges that the Defendants are liable for conversion under California law. In California, the elements of conversion are "(1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Tyrone Pac. Intern., Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981). Exclusive distribution rights over a program may be

---

[5] The Court notes, based on the record evidence adduced so far and the factors considered in determining enhanced damages, that even if Plaintiff establishes a willful violation, an award of (or even close to) the maximum amount of enhanced statutory damages appears very unlikely. *See, e.g.*, *Marcaida*, 2011 WL 2149923, at *4 (finding "that an award equal to three times the price Defendant would have had to pay to lawfully purchase the program is an appropriate sanction" for a "willful violation of Section 605."); *J & J Sports Prods., Inc. v. Mosley*, No. 10-cv-5126 CW-EMC, 2011 WL 2066713, at *6 (N.D. Cal. Apr. 13, 2011), *report and recommendation adopted*, No. 10-cv-5126-CW, 2011 WL 2039374 (N.D. Cal. May 25, 2011) (awarding $2,500 in statutory damages, considering the $1,000 cost of the commercial license, defendant's incremental profits, and the need to deter piracy, and awarding an additional $2,500 in enhanced damages because defendant's conduct was willful); *Ho*, 2009 WL 3047231, at *1 (finding non-willful statutory damages in the amount of $1,000 appropriate where commercial license would have been between $750 to $975).

[6] It is unclear what impact the livestream would have on the licensing fee.

[7] Under Section 553(c)(2)(C), the court "*may* . . . direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." (emphasis added). The parties have not briefed this issue, and this Order does not prejudice Plaintiff's ability to seek those costs.

1  converted.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995).

2  As discussed above, there is no dispute that Plaintiff owned the exclusive distribution
3  rights over the Program, and FPG has conceded liability for Section 553 and conversion.  FPG
4  Mot. at 3.  Moreover, ISM suffered damages by losing the potential profit it would have obtained
5  from sublicensing fees for the Program.  Answer ¶ 15.  FPG has also conceded liability.  FPG
6  Mot. at i ("FPG Converted ISM's video programming").  Therefore, FPG is liable for conversion.

7  Defendants also contend that Plaintiff's conversion claim can apply only to FPG, and not
8  to Defendants Zerpa and Martinez.  FPG Reply at 6.  As with Section 553 violations, an
9  "individual officer or director will be immune from torts committed by the corporation unless he
10 authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct."
11 *See J & J Sports Prods., Inc. v. Walia*, 2011 WL 902245, at *5 (internal quotations omitted).  With
12 respect to Defendant Zerpa, Plaintiff's claim is predicated on the violations of Section 553 by
13 FPG.  Therefore, for the same reasons Zerpa is liable for Section 553 violations, Plaintiff has met
14 its burden to establish Plaintiff Zerpa's personal liability for conversion because he actively
15 participated in the unauthorized acquisition of the Program.  With respect to Defendant Martinez,
16 there remains a genuine issue of material fact as to liability for conversion.

17 Defendants also contend that awarding damages for both conversion and Section 553 is
18 "duplicative."  FPG Mot. at 16.  Courts have "subsumed" conversion damages under statutory
19 damages where the statutory damages are sufficient to compensate the plaintiff for its loss.  *See,*
20 *e.g.*, *Santana*, 964 F.Supp.2d at 1076 (citing *J & J Sports Prods. v. Corona*, 2013 WL 3481697, at
21 *7 (E.D. Cal. July 10, 2013) ("because Plaintiff chose to receive statutory damages rather than
22 actual damages under the Communications Act, damages for conversion are subsumed into the
23 total award") and *Joe Hand Promotions, Inc. v. Behari*, 2013 WL 1129311, at *3 (E.D. Cal. Mar.
24 18, 2013) (explaining damages for conversion would not be awarded "because the recommended
25 statutory damages will sufficiently compensate plaintiff such that an award for conversion
26 damages would be duplicative")).

27 The Court **GRANTS** Plaintiff's motion for summary judgment on the conversion cause of
28 action as to the liability of Defendants FPG and Zerpa.  Given that damages under Section 553 are

1  not yet decided, Defendants' argument that damages for conversion would be duplicative of

2  damages under Section 553, FPG Mot. at 16, is premature. *See Santana*, 964 F. Supp. 2d at 1076

3  (declining to determine whether it is appropriate to award separate damages for conversion

4  because neither party asked the court to decide damages under Section 553 in their cross-motions

5  for summary judgment).

### D.  UCL Section 17200

Plaintiff's fourth claim alleges that Defendants are liable for violating the California Unfair Competition Law Section 17200. Cal. Bus. & Prof. Code § 17200 *et seq*. Only Defendants have moved for summary judgment on this cause of action. UCL Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising." *See J & J Sports Prods., Inc. v. Flores*, 913 F. Supp. 2d 950, 963 (E.D. Cal. 2012) (citing *Levine v. Blue Shield of California*, 117 Cal.Rptr.3d 262 (Cal. Ct. App. 2010)). As relevant here, the "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). The remedies provided under UCL Section 17200 are cumulative and derivative, such that if Defendants are liable for any other claim, they are liable under Section 17200. *Khoury v. Maly's of Cal., Inc.*, 14 Cal.App.4th 612, 619 (Cal. Ct. App. 1993); Cal. Bus. & Prof. Code § 17205.

Defendants contend only that their conduct was not unfair or fraudulent, and do not address the "unlawful" prong of UCL Section 17200. *See* FPG Mot. at 17-18. In light of the Court's finding that Defendants FPG and Zerpa are liable for violations of Section 553, and that there is a genuine issue of material fact as to Martinez, the Court **DENIES** Defendants' motion as to this cause of action.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment as to liability for Defendants FPG and Zerpa under Section 553 and for conversion. The Court **DENIES** the parties' cross-motions as to the willfulness of FPG and Zerpa, and Plaintiff's and Defendants' cross-motions as to Defendant Martinez's personal liability for Section 553 and for

common law conversion.  The Court also **DENIES** Defendants' motion for summary judgment as to the UCL Section 17200 cause of action.

As discussed at the hearing, the parties are **DIRECTED** to meet and confer in an effort to resolve the case informally, after which time the parties shall file a status report of no more than two pages by May 29, 2020 regarding the status of their settlement discussions.  If the case is not resolved by then, the Court will refer the parties to court-connected mediation.  All other pending pretrial and trial dates are hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: 4/29/2020

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge